UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

BKY 11-37421

Dadder's, Inc..

Debtor.

-------------------------------------------------

## NOTICE OF MOTION AND MOTION FOR
## ORDER VOIDING ABANDONMENT AND
## AUTHORIZING SALE OF PROPERTY

1.   John A. Hedback, trustee for the bankruptcy estate, (Trustee) by the undersigned attorneys, moves the court for the relief requested below and gives notice of hearing.

2.   The court will hold a hearing on this motion at 10:15 a.m. on May 8, 2013, in Courtroom No. 2B, at the United States Courthouse, at 316 North Robert Street, St. Paul, Minnesota.

3.   Any response to this motion must be filed and served not later than May 3, 2013, which is five days before the time set for the hearing (including Saturdays, Sundays, and holidays).   UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.   This Court has jurisdiction over this motion under 28 U.S.C. Section 157 and 1334. This motion is brought pursuant to Bankruptcy Rules 6007, 9005, 9006(c) and 9024. This proceeding arises under 11 U.S.C. Section 554 and 363.

5.   The petition commencing this chapter 7 case was filed on November 29, 2011. The case is now pending in this court.

6.   Dadder's, Inc. (Debtor) was formerly known as Beckerella Investments Incorporated and the real property owned by Debtor was titled in that name.

7.   At the time of the filing of the bankruptcy the property of the bankruptcy estate included a parcel of real property located at 461 Maryland Avenue St. Paul, legally described as:

Lot 40, Cottage Homes, except the North 200 feet thereof, Ramsey County, Minnesota.

(hereinafter "the Real Property").  Debtor listed the Real Property in its bankruptcy schedules as

having a value of $4,800,000.

8.     The Real Property is presently subject to the following encumbrances:

(a)     a first mortgage held by Landmark Community Bank, N.A. to secure a Promissory Note, dated July 27, 2007, in the original principal amount of $4,012,500.00 ("First Mortgage Note").  The amount due on the First Mortgage Note is $3,900,000.00. The First Mortgage Note is secured by a Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated July 27, 2007, executed by Beckerella Investments, Incorporated, a Minnesota corporation, as mortgagor, in favor of Washington Mutual Bank, a federal association, as mortgagee, and recorded in the office of the Ramsey County Recorder on August 1, 2007 Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank, FA with Assignment of Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated September 26, 2011, recorded on October 7, 2011, as Document No. 4299440, and further assigned to JP Morgan Chase Bank, N.A. by Assignment of Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated September 26, 2011, recorded on October 7, 2011 as Document No. 4299440, as further assigned to Landmark Community Bank by Assignment of Mortgage and Loan Documents, dated October 16, 2012, and recorded on November 14, 2012 as Document No. 4358815;

(b)     a second mortgage presently held by Landmark Community Bank, N.A. to secure a Promissory Note, dated July 26, 2007, in the original principal amount of $975,000.00 ("Second Mortgage Note") executed and delivered by Beckerella Investments, Inc. to Robert W. Wussler; said Second Mortgage Note was assigned by Wussler to Landmark Community Bank, N.A.; the amount due on the principal balance of the Second Mortgage Note is $945,000.00.  The Second Mortgage Note is secured by a Mortgage, dated August 1, 2007 in the original principal amount of $945,000.00, and recorded in the office of the Ramsey County Recorder on February 24, 2009 as Document No. 4142094 ("Second Mortgage") as assigned to Landmark Community Bank, N.A. by assignment, dated February 24, 2009, and recorded in the office of the Ramsey County Recorder on February 24, 2009 as Document No. 4142095;

(c)     Annual charges to the City of St. Paul for storm sewer, recycling and ROW maintenance fees which for the year 2013 are $9,796.70; and

(d)     Real estate taxes payable in 2013 in the amount of $122,912.00; there are no delinquent property taxes of record.

9.     At the commencement of the bankruptcy case it was represented to the Trustee that a receiver had been appointed who had been managing the Real Property for over 140 days. The foreclosure sale had taken place on the Real Property on November 10, 2011 by the second mortgage holder and that the Real Property was in the redemption period. Trustee had been informed that the foreclosure process had been done appropriately. As a result, on December 15, 2011, Trustee had sent out a Notice of Abandonment of the Real Property.

10.    Trustee has since been informed that the information provided regarding the running of the redemption period, as described in the foregoing paragraph, was mistaken. The

information provided assumed that foreclosure had occurred by means of a foreclosure by advertisement. In fact, foreclosure had occurred by means of a foreclosure by action. While the sheriff's sale took place on November 10, 2011, the redemption period had not started running because the plaintiff had not yet obtained an order confirming the foreclosure sale prior the commencement of the bankruptcy case on November 29, 2011. Because confirmation of the sale is necessary to start the running of the redemption period and because said confirmation was not obtained, the redemption period never ran.

11.    Trustee has received an offer from 461 Maryland, LLC, a Minnesota limited liability company ("Buyer") to purchase the following property:

(a)    Real Property.  The Real Property consisting of the real property  ("Land") together with: (1) all buildings and improvements constructed or located on the Land ("Buildings") and (2) all easements and rights benefiting or appurtenant to the Land (collectively the "Real Property");

(b)    Personal Property.  All of the personal property situated on and used in conjunction with the operation of the Real Property;

(c)    Leases. All interest, if any, as Lessor in all of the leases pertaining to the Real Property ("Leases");

(d)    Contracts, Permits, Warranties, Records, Miscellaneous.  Seller's interests, if any, in the following items relating to the Property: all service and maintenance contracts, equipment leases and other contracts ("Contracts"); all permits and licenses ("Permits");  all warranties and guaranties relating to the Property ("Warranties"); and all business records, including management, leasing, real estate taxes, assessments, insurance, rents, maintenance, repairs, capital improvements and services ("Records"); and

(e)    All rights, title and interest in the loan documents evidencing the first mortgage loan described hereinafter.

(the foregoing collectively are referred to hereinafter as the "Property").  A copy of the proposed purchase agreement and proposed assumption and assignment agreement related to the loan documents are attached hereto as Exhibit A.

12.    The sale and purchase were negotiated at arms' length, the terms of the purchase are fair and reasonable, and the Purchaser is acting in good faith for the purposes of Section 363 of the Bankruptcy Code.

13.    The purchase price is the sum of $4,450,000 plus additional sums to fund the additional disbursements to be made at closing.  The purchase price shall be paid and other funds shall be disbursed  as follows:

(a)    The Buyer shall assume the First Mortgage debt in the approximate amount of $3,900,000.00;

(b)    The Buyer shall pay the Second Mortgage debt as follows:

(i)    The Buyer shall pay cash in the amount of $250,000.00, which cash shall be disbursed to Landmark Community Bank and applied to the Second Mortgage Note; and

(ii)    The Buyer shall execute and deliver to Landmark Community Bank, N.A., a new promissory note and a new mortgage, in the original principal amount of $300,000.00;

(c)    The Buyer shall pay the sum of $10,000.00, payable to John Hedback, trustee of the bankruptcy estate of Dadder's, Inc.;

(d)    The Buyer shall pay the sum of $5,000.00, as and for closing costs payable by the Buyer.; and

(e)    The annual charges to the City of St. Paul and the real estate taxes shall be paid at closing as appropriate.

The consideration will satisfy both the first and second mortgages against the Property, cover the costs of sale, and result in the bankruptcy estate receiving $10,000.00 for distribution to creditors.

14.    Trustee believes that it is in the best interests of the estate and the creditors that this sale as proposed should be approved.

15.    Trustee is authorized under Section 363(f) of the Bankruptcy Code to sell the Property free and clear of liens because under Minnesota law, the lienholders could be compelled, in legal or equitable proceedings, to accept money satisfaction of their respective interests.

**WHEREFORE**, The Trustee seeks an order:

(A)    Entering an Order voiding the Notice of Abandonment of property dated December 15, 2011;

(B)    Entering an Order approving the sale described hereinabove, authorizing the trustee to enter into the purchase agreement, authorizing the trustee to enter into the assumption and assignment agreement and authorizing the trustee to sell the property pursuant to the terms described in the purchase documents;

(C)    Entering an Order containing the provisions contained in the proposed order submitted with this Motion; and

(D)    Granting any other relief the Court deems just and proper.

Dated:  April 19, 2013                    Hedback, Arendt & Carlson PLLC

                                          /e/ John A. Hedback
                                          John A. Hedback,  #142438
                                          2855 Anthony Lane South, Suite 201
                                          St. Anthony, MN  55418
                                          (612) 436-3280
                                          Attorney for the Trustee


                              VERIFICATION

        The undersigned hereby verifies that the foregoing facts are true and correct to the best of
my information knowledge and belief.


Dated: April 19, 2013                  ___/e/John A. Hedback___

# PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT (the "Agreement)  made as of this _____ day of February, 2013 by and between John Hedback, Trustee of the Bankruptcy Estate of Dadders, Inc., Bankruptcy Case No. 11-37421 ("Seller"), and 461 Maryland, LLC, a Minnesota limited liability company ("Buyer"),

WHEREAS, Seller is the owner of the property located at 461 West Maryland Avenue situated in the City of St. Paul, County of Ramsey, State of Minnesota, consisting of a 110 unit residential apartment and affiliated property (the "Property") and desires to sell the property to Buyer, and;

WHEREAS, Buyer desires to purchase the property from Seller upon the terms and conditions herein set forth:

1.    SALE OF PROPERTY.

Seller agrees to sell to Buyer, and Buyer agrees to buy from Seller, the following property (collectively, "Property"):

(a)    Real Property. The real property described on the attached Exhibit A consisting of the legal description of the real property  ("Land") together with: (1) all buildings and improvements constructed or located on the Land ("Buildings") and (2) all easements and rights benefiting or appurtenant to the Land (collectively the "Real Property");

(b)    Personal Property.  All of the personal property situated on and used in conjunction with the operation of the Real Property;

(c)    Leases. Seller's interest, if any, as Lessor in all of the leases pertaining to the Property ("Leases");

(d)    Contracts, Permits, Warranties, Records, Miscellaneous.   Seller's interests, if any, in the following items relating to the Property: all service and maintenance contracts, equipment leases and other contracts ("Contracts"); all permits and licenses ("Permits"); all warranties and guaranties relating to the Property ("Warranties"); and all business records, including management, leasing, real estate taxes, assessments, insurance, rents, maintenance, repairs, capital improvements and services ("Records"); and

(e)    All rights, title and interest of the Seller in the loan documents evidencing the first mortgage loan described hereinafter.

The sale shall be made free and clear of all interests pursuant to Section 363 of the United States Bankruptcy Code.

2.     PURCHASE PRICE AND PAYMENT.

(a)     Seller shall sell and Buyer shall purchase the Property for a purchase price
("Purchase Price") of FOUR MILLLION FOUR HUNDRED AND FIFTY THOUSAND AND
NO/100 DOLLARS ($4,450,000.00).

(b)     The Purchase Price shall be payable at closing by delivery by the Buyer of the
following:

(i)   Cash in the amount of Two Hundred Fifty Thousand and no/100 dollars
($250,000.00), which cash shall be payable to Landmark Community Bank, N.A., and
applied to that certain Promissory Note, dated July 26, 2007, in the original principal
amount of $975,000.00 ("Second Mortgage Note") executed and delivered by Beckerella
Investments, Inc. to Robert W. Wussler and assigned by Wussler to Landmark
Community Bank, N.A.;

(ii)   Such executed instruments and documents as may be required by Landmark
Community Bank, N.A. ("Landmark Bank") with respect to Buyer's assumption of debt
and related undertakings, as described below; and

(iii)  A new promissory note ("New Note") and mortgage ("New Mortgage"),
executed and delivered by Buyer in favor of Landmark Bank, together with such
instruments and documents as may be required by Landmark Bank, as described below.

(c)     The debt that will be assumed by Buyer as part of the Purchase Price is as follows
and shall be modified as described below:

Promissory Note, dated July 27, 2007, in the original principal amount of $4,012,500.00
("First Mortgage Note").  The amount due on the First Mortgage Note is approximately
$3,900,000.00.  The First Mortgage Note is secured by a Mortgage, Security Agreement,
Assignment of Leases and Rents and Fixture Filing, dated July 27, 2007, executed by
Beckerella Investments, Incorporated, a Minnesota corporation, as mortgagor, in favor of
Washington Mutual Bank, a federal association, as mortgagee, and recorded in the office
of the Ramsey County Recorder on August 1, 2007 as Document No. 4045779, and
assigned to U.S. Bank National Association, Trustee of the WAMU 2007 MF-1 Trust by
Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank, FA
with Assignment of Mortgage, Security Agreement, Assignment of Leases and Rents and
Fixture Filing, dated September 26, 2011, recorded on October 7, 2011, as Document No.
4299440, and further assigned to JP Morgan Chase Bank, N.A. by Assignment of
Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated
September 26, 2011, recorded on October 7, 2011 as Document No. 4299440, as further
assigned to Landmark Community Bank by Assignment of Mortgage and Loan
Documents, dated October 16, 2012, and recorded on November 14, 2012 as Document
No. 4358815 (collectively, the "First Mortgage").  The First Mortgage Note will be
modified pursuant to such instruments and documents as required by Landmark Bank, the

principal terms of which modification is as follows:  (i) the First Mortgage Note shall bear interest at the rate of three and one half percent per annum (3.5%) for the first five years of the term, amortizing over thirty (30) years and maturing fifteen (15) years from the date of modification; (ii) in years six through ten of the term of the First Mortgage Note, the interest shall be reset, and the First Mortgage Note shall bear interest at a variable rate based on changes in the index which is the Wall Street Journal highest published prime rate (the "Index"), with the interest rate being  a rate of 0.25 percentage points over the Index, and shall be re-amortized over twenty-five (25) years; and (iii) in years eleven through fifteen of the term of the First Mortgage Note, the interest shall be reset, and the First Mortgage Note shall bear interest at a variable rate based on changes in the index which is the Wall Street Journal highest published prime rate (the "Index"), with the interest rate being  a rate of 0.25 percentage points over the Index and shall be re-amortized over twenty (20) years.  The First Mortgage Note will be further modified to include a requirement for a $50,000.00 maintenance reserve, the balance of which reserve shall be replenished by the Buyer after draws upon said reserve to pay maintenance costs so that said maintenance reserve shall never be less than the sum of $30,000.00.

(d)   The New Note shall be evidenced by such instruments and documents as required by Landmark Bank, and shall be in an original principal balance of $300,000.00, bearing interest at the rate of 4.00% per annum, amortizing over 30 years, and maturing 5 years from the date of execution.  The New Note shall be secured by the New Mortgage which shall be evidenced, executed, delivered and filed pursuant to such instruments and documents as required by Landmark Bank within its sole discretion.  The New Note shall be guaranteed by the individuals holding membership interests in the Buyer.

(e)      In addition to the Purchase Price, the Buyer shall pay, as a closing cost, among other closing costs, the sum of Ten Thousand and No/100 Dollars ($10,000.00), payable to John Hedback, Trustee of the Bankruptcy Estate of Dadders, Inc.

(f)      In addition to the Purchase Price, the Buyer will pay an additional sum of Five Thousand and No/100 Dollars ($5,000.00), as additional funds to cover closing costs payable by the Buyer.

3.    TITLE MATTERS.

(a)      Subject to performance by the Buyer, the Seller agrees to execute and deliver at Closing a Quit Claim Deed conveying marketable title to said Property subject only to the following exceptions:

(i)      Building and zoning laws.

(ii)      Reservation of any minerals or mineral rights to the State of Minnesota.

(iii)       Easements or other encumbrances approved in writing by Buyer.

(b)      Seller shall deliver possession not later than the Closing Date.

(c)      Within a reasonable time after approval of this agreement, a commitment for issuance by Title Company of an Owner's Policy of Title Insurance (ALTA-2006) covering the Property shall be provided.   Buyer shall have 20 days after receipt thereof to examine title and give Seller notice of any objections to title.   If objections are made,  a period of 60 days shall be allowed to make such title marketable. Pending correction of title the payments hereunder required shall be postponed, but upon correction of title and
within 10 days after written notice to the buyer, the parties shall perform this agreement according to its terms.

(d)      If title is not marketable and is not made so within 60 days from the date of written objections as above provided, this agreement shall be null and void, at option Buyer and neither party shall be liable to the other.  All earnest money paid by the Buyer and all interest thereon shall be refunded. If the title to the property is found marketable or is so made within said time, and if the Buyer shall default in any of the agreements and continue in default for a period of 10 days, then the Seller may terminate this Agreement and retain all amounts paid by Buyer as liquidated damages, time being of the essence hereof. This provision shall not deprive either party of the right of enforcing the specific performance of this Agreement if the Agreement is not terminated, and provided action to enforce such specific performance is commenced within six months after the Closing Date.

4.     DOCUMENT INSPECTION.

Within ten (10) days after the full execution of this Agreement, the Buyer shall be provided with the following information and statements:

(a)      Copies of surveys and building plans of the Property as Seller may have.

(b)      Copies of all Leases, Contracts, Permits, Warranties, easements, restrictions, and other encumbrances or matters benefiting or burdening the subject property.

(c)      Real estate tax statements for real estate taxes payable in the years 2008 through 2012.

(d)      Buyer shall have the right to review and copy all soil and environmental tests and reports affecting the Property.

(e)      Any title opinions, title insurance policies, or other documents evidencing the status of title to the Property.

(f)      Copies of all utility bills for the years 2008 through 2012, if available.

(g)      A list of any repairs or improvements made to Property from 2008 through 2012, if available.

Buyer shall have thirty (30) days from its receipt of the last of the items listed above in order

4

to examine the above items and perform any testing, environmental inspections and review of the Property, or other inspections which the Buyer deems necessary ("Inspection Period"). In the event that Buyer in its sole discretion is satisfied with such inspections, testing, and examination of documents, Buyer shall so notify Seller and Title Company in writing on or prior to the last day of the Inspection Period. In the event Buyer does not so notify Seller, then this agreement shall be null and void and all earnest money and interest thereon shall be returned to Buyer. Buyer hereby agrees to indemnify and hold Seller harmless from any loss or damage resulting from Buyer's entry or testing on the Property. Buyer shall share all test results with Seller and repair all damage to the Property caused by Buyer. This indemnity and hold harmless shall survive any termination or cancellation of this Agreement.

5.     REAL ESTATE TAXES. SPECIAL ASSESSMENTS. AND PRORATIONS.

Real estate taxes due and payable in the year of closing shall be prorated as of the actual closing date. All levied special assessments as of the actual closing date shall be prorated as of the actual closing date.  All pending special assessments as of the actual closing date shall be assumed by Buyer.

All rents and other charges under the Leases will be prorated as of the Closing Date. If at the Closing Date a tenant under any of the Leases is delinquent, then if Buyer receives from such tenant amounts in excess of the payments due Buyer, Buyer will remit such excess amounts to the Bank. Buyer will have no obligation to collect any payments and will only be obligated to make payment to the Bank after Buyer is fully paid for all amounts due it.

6.     REPRESENTATIONS AND WARRANTIES OF SELLER.

Seller represents warrants and agrees now and as of the Closing Date as follows:

a.     Authority.     Subject to the terms and conditions of the Purchase Agreement, Seller has the requisite power and authority to enter into and perform this Agreement and the Seller's closing documents to be signed by it; such documents have been duly authorized by all necessary action on the part of Seller and have been and shall be duly executed and delivered; and such documents are and shall be valid and binding obligations of Seller, enforceable in accordance with their terms.

b.     Wells.  To Seller's knowledge, there are no "Wells" on the Real Property within the meaning of Minn. Stat. Chap. 1031, unless disclosed in writing.

c.     Individual Sewage Treatment Systems.   To Seller's knowledge, there are no "individual sewer treatment systems" on the Real Property, as that term is defined in Minn. Stat. § 115.55.

d.     Storage Tanks.  To Seller's knowledge, no aboveground or underground storage tanks are located under, in or about the Real Property, unless disclosed in writing.

5

e.    Methamphetamine.   Solely for the purpose of satisfying the requirements of Minnesota Statutes, Section 152.0275, to Seller's knowledge, no methamphetamine production has occurred on the Real Property.

f.    Seller has received no notice or complaint from any governmental authority or insurance underwriter relating to the condition of or operations upon the property which remain uncured on the date hereof.

g.    Seller will not execute any new leases or modify any existing leases without the prior written consent of Buyer.

h.    Seller agrees to convey to Buyer, together with the title to the Property, all rights, title and interest including easements, if any, necessary to operate the Property, and including without limitation, all of Seller's right, title and interest in any streets or easements adjacent thereto which may be vacated, abandoned or released in the future.

i.    To the best of Seller's knowledge, there are no existing proceedings, nor any threatened proceedings against the Property or owners thereof, either administrative or judicial, related to any alleged violation of any laws, any rules, regulations or order, and, to the best of Seller's knowledge, there is no litigation or condemnation pending, nor threatened, which would affect the property or the use thereof by Buyer. Seller knows of no present proceeding that could cause additional special assessments against the Property.

j.    To the best of Seller's knowledge, no other person has any right to purchase all or any portion of the Property and Seller has or will have as of the Closing Date, good and marketable title to the Property, free and clear of all liens, mortgages, charges and encumbrances, except as expressly permitted hereunder, and except those to be released or satisfied upon the Closing of this transaction.

k.    To the best of Seller's knowledge, there are no contracts, agreements or obligations relating to the Property that will extend beyond the Closing Date, except those previously disclosed to Buyer in writing.

l.    To the best of Seller's knowledge, the Property neither contains, releases or threatens to release any toxic materials, hazardous wastes or substances, or pollutants or contaminants within the meaning of any State or Federal superfund law, or environmental law, rule or order, except as may have been disclosed to Buyer.

7.    CLOSING DATE AND DOCUMENTS.

The closing of the transaction contemplated by this Agreement ("Closing") shall be held five days after the date of the order issued by the U.S. Bankruptcy Court authorizing the Seller to sell the Property, or at such other date or time as the parties may mutually agree upon in writing.  Such date of Closing is referred to herein as the "Closing Date."

On the Closing Date, Seller shall execute and deliver (or deliver, as applicable) to Buyer the following documents in form reasonably satisfactory to Buyer:

(a)    The Quit Claim Deed referred to in Section 3.

(b)    A certified copy of an order authorizing the sale of the Property to the Buyer for the purchase price stated herein.

(c)    Bill of Sale conveying the Personal Property to Buyer as-is, but free and clear of all encumbrances.

(d)    An Assignment of Leases conveying the Leases and any security deposits, prepaid rents or collections and guarantees held by the receiver regarding the Leases to Buyer, free and clear of all encumbrances.

(e)    An Assignment of Contracts, Permits, Warranties and miscellaneous documents (including without limitation name rights) conveying Seller's interest to Buyer together with the consent of all parties having a right to consent to such Assignment.

(f)    An Assignment and Assumption Agreement assigning to the Buyer all of the Seller's rights, liabilities and obligations in, to and under the First Mortgage Note, as modified, the First Mortgage, as modified, and all associated loan documents..

(g)    A Satisfaction of Mortgage regarding that certain Mortgage, dated August 1, 2007 in the original principal amount of $945,000.00, and recorded in the office of the Ramsey County Recorder on February 24, 2009 as Document No. 4142094 ("Second Mortgage") as assigned to Landmark Community Bank, N.A. by assignment, dated February 24, 2009, and recorded in the office of the Ramsey County Recorder on February 24, 2009 as Document No. 4142095.

(h)    Any security deposits and prepaid rents held by the receiver under the Leases, including valid transfers of any noncash securities or documents held for such purposes, together with notices to tenants and third parties of such transfers.

(i)    Original copies of the Leases, Contracts, Permits, Warranties, and Records, plus all plans and specifications, keys and lock combinations for the Property in Seller's possession.

(j)    An assignment of any assignable Permits applicable to the Property.

(k)    An Affidavit of Seller in customary form regarding judgments, bankruptcies, liens, etc.

(l)    A non-foreign affidavit containing information required by IRS Code, Section 1445 (b)(2).

7

(m)     A well certificate for any wells on the Property or, if there are no wells on the Property, a statement on the Warranty Deed to that effect.

(n)     If applicable, an affidavit as required by state statute for any storage tanks on the Property.

(o)     Estoppel certificates in form acceptable to Buyer from the tenants under the Leases, if available.

(p)     All other documents, information and other items reasonably determined by Buyer to be necessary to transfer the Property to Buyer free and clear of all encumbrances except those permitted under this Agreement.

8.     CONDEMNATION OR CASUALTY.

If all or any part of the Property is substantially damaged by fire, casualty, the elements or any other cause, Seller shall give notice of such event to Buyer within 3 days after its occurrence, and Buyer shall have the right to terminate this Agreement and receive back all earnest money by giving notice to Seller within 15 days after Seller's notice. If Buyer shall fail to give the notice to terminate, then the parties shall proceed to closing, and Seller shall assign to Buyer all rights to insurance proceeds resulting from such event. If eminent domain proceedings are threatened or commenced against all or any part of the Property, Seller shall give notice to Buyer within 3 days after receiving notice of the proceedings, and Buyer shall have the right to terminate this Agreement and receive back all earnest money by giving notice to Seller within 15 days after Seller's notice. If Buyer shall fail to give the notice to terminate, then the parties shall proceed to closing, and Seller shall assign to Buyer all rights to appear in and receive any award from such proceedings.

9.     ENVIRONMENTAL.

9.1     SELLER'S REPRESENTATIONS.

Seller represents and warrants to Buyer that the following representations and warranties are true and correct on the date hereof and will be true and correct as of the Closing Date:

(a)     Except as disclosed in Seller's environmental files and made available and furnished to Buyer, Seller is not aware of any existing environmental condition.

(b)     Except as disclosed in the environmental file, Seller, has not: (i) entered into or been subject to any consent decree, compliance order; or administrative order with respect to the Property or any facilities or operations thereon; (ii) received notice under any citizen suit pursuant to any environmental law in connection with the Property or any facilities or operations thereon; or (iii) been subject to or threatened with any governmental or citizen enforcement action or claim with respect to the Property or any facilities or operations thereon.

8

10.   IRS SECTION 1031 EXCHANGE.  At Buyer's option, Seller agrees to cooperate with Buyer in a deferred Section 1031 like kind exchange of the Property as long as Seller is not required to take title to any other property or to incur any further cost.

11.   NOTICES.   All notices, demands and requests required or permitted to be given under this Agreement must be in writing and shall be deemed to have been properly given or served either by personal delivery or by depositing the same in the United States Mail, addressed to Seller or to Buyer, as the case may be, prepaid and registered or certified mail, return receipt requested, at the following addresses:

TO SELLER:                    John A. Hedback, Trustee of Bankruptcy Estate of
                              Dadder's Inc.
                              2855 Anthony Lane South, Sutie 201
                              St. Anthony, MN  55418
                              Ph (612) 436-3280
                              Fax (612) 789-2109

TO BANK:                      Landmark Community Bank, N.A.
                              1048 Meadowlands Drive
                              White Bear Township, MN
                              Attn:  Kevin Johnson
                              Ph: (763) 444-7785
                              Fax: (651) 653-0768

                              And to:

                              Landmark Community Bank
                              29 West Main Street
                              PO Box 250
                              Isanti, MN  55040
                              Attn:  Thomas F. Cross
                              Ph:  (763) 444-7716
                              Fax:  (763) 444-9289

TO BUYER:                     461 Maryland, LLC
                              c/o Christoffel & Elliott, P.A.
                              Attn: James F. Christoffel, Esq.
                              1111 UBS Plaza
                              444 Cedar Street
                              St. Paul, MN 55101
                              Ph: 651-224-0244
                              Fax: 651-224-0550

12.   MISCELLANEOUS.   This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and assigns.   This Agreement shall be deemed

to be a contract made under the laws of the State of Minnesota and for all purposes shall be governed and construed in accordance with the laws of said State.   All representations, warranties and agreements contained in this Purchase Agreement shall not be merged into any instruments or conveyances delivered at Closing, and the parties shall be bound accordingly. The Buyer will execute all instruments and documents and to perform all acts which may be reasonably required to accomplish the purpose of this Agreement.

13.   DEFAULT/REMEDIES.

(a)   If Buyer defaults hereunder, Seller may, as Seller's sole remedy, terminate this Agreement pursuant to applicable Minnesota law and retain the Earnest Money as liquidated damages, in which event neither Buyer nor Seller shall have any further obligations under this Agreement.

(b)   If Seller defaults hereunder and such default continues for thirty (30) days after written notice from Buyer, Buyer may, as Buyer's sole remedy, select any one of the following: (i) terminate this Agreement and, after refund of the Earnest Money, neither Seller nor Buyer shall have any further obligations under this Agreement; (ii) purchase the Property notwithstanding such default, pursuant to the remaining terms of this Agreement thereby waiving any claim for default or any claim for reimbursement to Buyer; or (iii) enforce specific performance of Seller's obligations under this Agreement; provided, however, that any such action for specific performance must be instituted, if at all, by notice to Seller within forty-five (45) days of the default and, if notice is not so instituted within such period of time, then Buyer shall be deemed conclusively to have waived the right to institute such action and to have elected to pursue the other remedies provided hereinabove, if any.

14.   ACCEPTANCE AND CONDITIONS TO SELLER'S OBLIGATION TO SELL.
Seller shall have five (5) days from its receipt of this Purchase Agreement to accept this Purchase Agreement.  Seller shall have no obligation to sell the Property unless: (i) Buyer shall have delivered all documents and performed all obligations required to be performed hereunder; (ii) Landmark Community Bank, N.A. shall have consented to the sale; and (iii) Seller shall have received an order authorizing the sale of the Property.

15.   BROKERAGE COMMISSION.  Seller will be responsible for payment of the brokerage commission owing to a third party' as a result of this transaction.   Buyer represents and warrants that it has not retained the services of any broker in this transaction.

*The remainder of this page is intentionally left blank.  Signature page to follow.*

10

**SELLER**:

John A. Hedback, Trustee of Bankruptcy Estate of Dadder's Inc.


By: _____
     John A. Hedback


**BUYER**:

461 Maryland, LLC, a Minnesota limited liability company


By:_____
Its:  Chief Manager

# EXHIBIT A

## LEGAL DESCRIPTION AND TAX PROPERTY ID NUMBER(S)

Lot 40, Cottage Homes, except the North 200 feet thereof, Ramsey County, Minnesota

Property Tax Id No.:  24.29.23.34.0035

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement") is made and entered into as of the ___ day of _____, 2013, by and among Landmark Community Bank, a _____ (the "Lender"), John Hedback, Trustee of the Bankruptcy Estate of Dadders, Inc., Bankruptcy Case No. 11-37421 (the "Assignor"), and 461 Maryland, LLC, a Minnesota limited liability company (the "Assignee").

## RECITALS

A.    Assignor is the Trustee of the bankruptcy estate of Dadders, Inc. ("Borrower") and has therefore succeeded interest as the borrower in the following loan documents ("Loan Documents"):

i.    Promissory Note, dated July 27, 2007, in the original principal amount of $4,012,500.00 ("First Mortgage Note");

ii.   Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated July 27, 2007, executed by Beckerella Investments, Incorporated, a Minnesota corporation, as mortgagor, in favor of Washington Mutual Bank, a federal association, as mortgagee, and recorded in the office of the Ramsey County Recorder on August 1, 2007 as Document No. 4045779, and assigned to U.S. Bank National Association, Trustee of the WAMU 2007 MF-1 Trust by Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank, FA with Assignment of Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated September 26, 2011, recorded on October 7, 2011, as Document No. 4299440, and further assigned to JP Morgan Chase Bank, N.A. by Assignment of Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated September 26, 2011, recorded on October 7, 2011 as Document No. 4299440, as further assigned to Landmark Community Bank by Assignment of Mortgage and Loan Documents, dated October 16, 2012, and recorded on November 14, 2012 as Document No. 4358815 (collectively, the "First Mortgage")

covering certain property located at 455 Maryland Avenue West, St. Paul, Minnesota 44117 and legally described on **Exhibit A** ("Property");

iii.    Promissory Note and Loan Agreement, dated July 26, 2007, in the original principal amount of $975,000.00 ("Second Mortgage Note") executed and delivered by Beckerella Investments, Inc. to Robert W. Wussler; said Second Mortgage Note was assigned by Wussler to Landmark Community Bank, N.A.;

iv.    Mortgage, dated August 1, 2007 in the original principal amount of $945,000.00, and recorded in the office of the Ramsey County Recorder on February 24, 2009 as Document No. 4142094 ("Second Mortgage") as assigned to Landmark Community Bank, N.A. by assignment, dated February 24, 2009, and recorded in the office of the Ramsey County Recorder on February 24, 2009 as Document No. 4142095 covering the Property;

B.    Assignor intends to transfer title to the Property to Assignee, subject to the First Mortgage and Second Mortgage, and effective as of the date hereof, Assignee wishes to assume, and the Lender has agreed to allow the assumption by Assignee of, all of the Assignor's obligations under the Loan Documents.

**NOW THEREFORE**, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which is hereby expressly acknowledged, the parties hereto agree as follows:

1.    <u>Recitals</u>.  Assignor and Assignee (collectively, the "Borrowing Parties") acknowledge that the Recitals herein are true and correct statements of fact and are hereby incorporated into this Agreement.

2.    <u>Assignment</u>.  Assignor hereby transfers and assigns all of its rights, liabilities and obligations in, to and under each of the Loan Documents to Assignee.

3.    <u>Assumption</u>.  Subject to Lender's agreements set forth herein, Assignee hereby accepts the assignment of all of Assignor's rights, liabilities and obligations in, to and under each of the Loan Documents, and agrees to be bound by each of the Loan Documents in accordance with their respective terms and conditions, as though the same had been originally executed by Assignee.  Assignee hereby agrees that its assumption of liability under each of the Loan Documents shall constitute a direct and primary liability of Assignee on each of the Loan Documents and the indebtedness secured thereby, and shall not be conditioned upon any obligation of the Lender to first resort to enforcement of any remedies against Assignor, or any subsequent assuming party, or any security given therefor.  Lender hereby releases Assignor from all of its obligations under the Loan Documents.

4.    <u>Lender Agreements</u>.

(a)    Lender hereby approves the sale of the real property and improvements subject to the Loan Documents as contemplated by that certain Purchase Agreement dated _____, 2013, among Assignor and Assignee ("Purchase Agreement");

(b)    Lender agrees upon execution of this Agreement and consummation of the sale pursuant to the Purchase Agreement that:

(i)    It will amend and restate the terms of the Second Mortgage Note and the Second Mortgage in accordance with the terms of the amended and restated documents attached hereto as **Exhibits B** and **C;**

(ii)    It acknowledges and agrees that the principal balance of the Second Note being assumed is $300,000.00 as of the date of this assumption and that there is no accrued unpaid interest due under the Second Note as of the date hereof;

(iii)    It acknowledges and agrees that the principal balance of the First Note being assumed is $_____ as of the date of this assumption and that there is no accrued unpaid interest due under the First Note as of the date hereof;

(iv)    It has waived any and all late fees, default interest, penalties, collection costs, attorneys' fees and all other similar charges and expenses under the First Note or the Second Note accrued through the date hereof;

(v)    It has waived all defaults of every kind and character under the First Note, First Mortgage, Second Note and Second Mortgage existing through the date hereof.

5.    <u>Representation and Warranties</u>.  Assignor hereby represents and warrants to Lender that the execution, delivery and performance of this Agreement have been authorized by all requisite bankruptcy court action.  Assignee represents and warrants to Lender that the execution, delivery and performance of this Agreement have been authorized by all requisite limited liability company action.

6.    <u>Further Assurances</u>.  Promptly upon receipt of a written request from the Lender, each of the Borrowing Parties will do such further things and execute such further documents as may be reasonably requested by the Lender in order to make any corrections to any of the Loan Documents, or to otherwise create, preserve, perfect or validate any of the rights or interests granted, reserved, or intended to be granted or reserved, to the Lender under or pursuant to this Agreement or any of the Loan Documents.

7.      <u>Remedies</u>.  No right or remedy conferred upon or reserved to the Lender under any of the Loan Documents and the indebtedness secured thereby and other security given for the payment thereof, is intended to be exclusive of any other right or remedy available to Lender, but each and every right and remedy shall be cumulative and shall be in addition to every other right and remedy given under the aforementioned instruments.

8.      <u>Modifications to be in Writing</u>.  No modification or waiver of any provisions of this Agreement, nor any consent to any departure by the Assignee therefrom, shall in any event be effective unless the same shall be set forth in a writing duly signed or acknowledged by the Lender, and then such waiver or consent shall be effective only in the specific instance, and for the specific performance for which given.  No notice to or demand on the Assignee in any instance shall entitle the Assignee to any other or future notice or demand in the same, similar or other circumstances.  The consent to the assignment and assumption referred to herein shall not be deemed a consent or agreement by the Lender to consent to any future sale, assignment or transfer.

9.      <u>No Implied Waiver</u>.  Neither any failure nor any delay on the part of the Lender in exercising any right, power or privilege hereunder, or under any of the other Loan Documents, shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or future exercise, or the exercise of any other right, power or privilege.

10.      <u>Notices</u>.  All notices, requests, demands and other communications under or in respect of this Agreement or any of the Loan Documents to any of the parties hereto shall be sent to such parties as provided for in the Loan Documents.

11.      <u>Headings</u>.  The headings in this Agreement are for convenience of reference only, and shall not limit or otherwise affect the meaning or interpretation of any provision hereof.

12.      <u>Parties Bound</u>.  This Agreement and each and every part hereof shall be binding upon each of the Borrowing Parties and their successors and assigns, and shall inure to the benefit of the Lender and each and every future holder of any of the Loan Documents, including the successors and assigns of the Lender.

13.      <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, all of which evidence only one agreement and only one of which need be produced for any purpose, which, when assembled and taken together, is to be regarded as a single agreement.

14.      <u>Governing Law</u>.  The internal laws of Minnesota shall govern the validity, construction, enforcement, and interpretation of this Agreement, without regard to choice of law provisions.

4

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first above written.

Landmark Community Bank

By:_____

Its:_____

STATE OF _____ )
                       )ss.
COUNTY OF _____ )

The foregoing instrument was acknowledged before me this ____ day of _____, 2013, by _____, the _____ of Landmark Community Bank, a _____, on behalf of the _____.

_____
Notary Public

5

John A. Hedback, Trustee of
 Bankruptcy Estate of Dadder's Inc.

By:_____
    John A. Hedback

STATE OF MINNESOTA   )
                    )ss.
COUNTY OF _____   )

    The foregoing instrument was acknowledged before me this ____ day of _____, 2013, by John A. Hedback, the Trustee of the Bankruptcy Estate of Dadder's, Inc., on behalf of the Bankruptcy Estate.

_____
Notary Public

461 Maryland, LLC

By:_____
    Its:_____

STATE OF MINNESOTA   )
                    )ss.
COUNTY OF _____   )

    The foregoing instrument was acknowledged before me this ____ day of _____, 2013, by _____, the _____ of 461 Maryland, LLC, a Minnesota limited liability company, on behalf of the company.

_____
Notary Public

This instrument drafted by:

Christoffel & Elliott, P.A.
1111 UBS Plaza
444 Cedar Street
St. Paul, Minnesota 55101-2129
k/2286.08-loan assign

**EXHIBIT A**
**LEGAL DESCRIPTION**

That certain property lying in the County of Ramsey, State of Minnesota, and legally described as follows:

Lot 40, Cottage Homes, except the North 200 feet thereof, Ramsey County, Minnesota

**EXHIBIT B**
**AMENDED AND RESTATED NOTE**

**EXHIBIT C**

**AMENDED AND RESTATED MORTGAGE**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

                                                                      BKY 11-37421

Dadder's, Inc.

                           Debtor(s).

-------------------------------------------------

# MEMORANDUM

John A. Hedback, trustee for the estate of Dadder's, Inc. hereby provides the following memorandum in support of its motion for order voiding abandonment and approving sale of property.

John A. Hedback, trustee for the estate of Dadder's, Inc. is seeking to obtain Court approval of the sale of a parcel of real estate upon the voiding a prior abandonment. The terms of the basis for the motion and the proposed disposition of assets is described in detail in the Motion.

This Court has jurisdiction over this motion under 28 U.S.C. Section 157 and 1334. This motion is brought pursuant to Bankruptcy Rules Rules 6007, 9005, 9006(c) and 9024.

11 U.S.C. §554(a) provides that "After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." The procedure for abandoning property is set for in Rule 6007(a) which provides a notice to creditors and if there is no objection after a period of time the property being deemed abandoned. Trustee followed this procedure.

Generally, formal abandonments of property are considered final. However, the courts have recognized an exception in the case where a trustee has received "incomplete or false information" concerning an asset and relied upon that information in determining whether to administer that property. *See Cusano v. Klein*, 264 F.3d 936 (9th Cir. 2001). It can not be just a mistake in valuation of the property. In this case trustee was informed that a foreclosure sale had been completed and the redemption period was set to expire in just a few weeks. This information was incorrect and as a result the trustee was not given a proper opportunity to determine whether to administer the asset.

11 U.S.C. §363(b)(1) authorizes the trustee to sell property of the estate, other than in the ordinary course of business, after notice and a hearing.

Section 363(f) provides that a trustee or a debtor-in- may sell property free and clear of any interest of a third party that might attach to it, if:

(1)     applicable nonbankruptcy law permits;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest in bona fide dispute: or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

As indicated in the motion, the property is subject to two mortgages now held by Community Bank, N.A.. The creditor in question has indicated that it will consent to the sale with an agreed upon portion of the sale proceedings being granted to the bankruptcy estate. Trustee is not aware of any junior liens

Trustee believes that the proposed sale is in the best interest of the estate.


Dated: April 19, 2013                           Hedback, Arendt & Carlson PLLC


                                                /e/ John A. Hedback
                                                John A. Hedback,  #142438
                                                2855 Anthony Lane South, Suite 201
                                                St. Anthony, MN  55418
                                                (612) 436-3280
                                                Attorney for the Trustee

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

BKY 11-37421

Dadder's, Inc..

                  Debtor(s).

-------------------------------------------------

**UNSWORN DECLARATION FOR PROOF OF SERVICE**

The undersigned, being an employee of Hedback, Arendt & Carlson, PLLC, attorneys licensed to practice law in this Court, with offices located at 2855 Anthony Lane South, Suite 201, St. Anthony, Minnesota, declares that on the date indicated below, I served the following:

1. Notice of Motion and Motion for Order Voiding Abandonment and Authorizing Sale of Property including verification;
2. Purchase Agreement;
3. Assignment and Assumption;
4. Memorandum;
5. Proposed Order; and
6. Unsworn Declaration for Proof of Service

on each of the entities named below by delivering to each of them by mail (unless otherwise indicated) a copy thereof at their addresses which are as follows:

City of St. Paul
Office of Financial Services
Real Estate – Assessments
City Hall Annex
25 West Fourth Street, Suite 1000
Saint Paul, MN 55102

Ramsey County Property Records and Revenue
PO Box 64097
St. Paul, MN 55164-0097

*Via electronic means:*

Office of United States Trustee

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated:  April 19, 2013                   _____/e/ John Hedback_____

ADVANTAGE LEASING
324 E WISCONSIN AVE STE 250
MILWAUKEE WI 53202-4315

ADVANTAGE LEASING CORP
DEPT 58475
MILWAUKEE WI 53259-0001

ASSOCIATED BANK
1305 MAIN ST
STEVENS POINT WI 54481-2898

BARNES AND THORNBURG LLP
DAVID A. ORENSTEIN ESQ
225 S SIXTH STREET SUITE 2800
MINNEAPOLIS MN 55402-4662

CHASE
ROBERT J PLISZKA
712 MAIN ST 8TH FL
HOUSTON TX 77002-3201

CHASE MORTGAGE
PO BOX 78420
PHOENIX AZ 85062-8420

DADDER'S INC.
2559 W 7TH ST
ST. PAUL, MN 55116-3027

JOHN F BONNER III ESQ
BONNER AND BORHART LLP
200 SOUTH SIXTH ST STE 1950
MINNEAPOLIS MN 55402-1403

John F. Bonner, III Landmark bank
Bonner & Borhart, LLP
1950 U.S. Bank Plaza
220 South Sixth Street
Minneapolis, MN 55402-4521

JP MORGAN CHASE BANK
712 MAIN ST ATTN ROBERT PLISZKA
8TH FLOOR MAIL STOP TX2 N096
HOUSTON TX 77002-3201

LANDMARK BANK
5909 167TH AVE
ANOKA MN 55303-3785

Landmark Community Bank
Bonner & Borhart, LLP
Attn: John F. Bonner, III
1950 U. S. Bank Plaza
220 South Sixth Street
Minneapolis, MN 55402-4502

LANDMARK COMMUNITY BANK
1048 MEADOWLANDS DR
WHITE BEAR TOWNSHIP MN 55127-2341

LEONARD STREET DEINARD
ATTN ELIZABETH LARSEN
150 SOUTH FIFTH STREET SUITE 2300
MINNEAPOLIS MN 55402-4238

STEVEN SCOTT MANAGEMENT INC
ATTN STEVEN C SCHACHTMAN
5402 PARKDALE DR STE 200
MINNEAPOLIS MN 55416-1661

THE ENGLE LAW FIRM
333 WASHINGTON AVE N STE 300
MINNEAPOLIS MN 55401-1353

WESTRICK & MCDOWELL-NIX PLLP
210 DEGREE OF HONOR BUILDING
325 CEDAR STREET
SAINT PAUL MN 55101-1015

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Dadder's, Inc.,

Debtor.

Case No. 11-37421

Chapter 7

---

**ORDER VOIDING ABANDONMENT AND AUTHORIZING SALE OF PROPERTY**

---

The above entitled matter came before the Court upon the Trustee's Motion for Order Voiding Abandonment and Authorizing Sale of Property ("Motion"). free and clear of liens. Appearances, if any, were noted upon the electronic record made of these proceedings.  Upon all the files, records and proceedings herein and the Court being duly advised in the premises, the Court makes the following:

**FINDINGS OF FACT**

1.      The purchaser named in the Motion, 416 Maryland, LLC ("Purchaser") is a good faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code.

2.      The Debtor, Dadder's Inc., was previously known as Beckerella Investments Incorporated and the real property owned by Debtor was titled in that name.

3.      The property specified in the Motion may be sold free and clear of all liens, claims and encumbrances, in accordance with the provisions of Section 363 of the Bankruptcy Code.

4.      The terms of the proposed sale are fair and reasonable under the circumstances.

5.      Notice of the Motion was served in accordance with all applicable rules and notice to parties in interest was timely, adequate and sufficient.

6.      A reasonable opportunity to be heard has been afforded to all parties in interests.

Based on the foregoing findings of fact,

**IT IS HEREBY ORDERED**:

1.       The Trustee's Motion is granted.

2.       The Notice of Abandonment, dated December 15, 2001, is hereby declared void and of no effect.  Accordingly the real property that was the subject of said abandonment is property of the bankruptcy estate.

3.       The Trustee is authorized to enter into that certain Purchase Agreement by and between John Hedback, Trustee of the Bankruptcy Estate of Dadders, Inc., Bankruptcy Case No. 11-37421 and 461 Maryland, LLC, a Minnesota limited liability company ("Buyer"), and that certain Assignment and Assumption Agreement, by and among Landmark Community Bank, N.A. (the "Lender"), John Hedback, Trustee of the Bankruptcy Estate of Dadders, Inc., Bankruptcy Case No. 11-37421, and 461 Maryland, LLC, a Minnesota limited liability company, copies of which purchase agreement and assignment and assumption agreement were attached to the Motion.

4.       The Trustee is authorized to sell, to 461 Maryland, LLC, for the price of Four Million, Four Hundred and Fifty Thousand and 00/100 Dollars ($4,450,000.00) plus additional sums as described herein, the following described property:

a.       Real Property.  The property consisting of the real property  located at 455 Maryland Avenue West, St. Paul, Minnesota and legally described as:  Lot 40, Except the North 200 feet thereof, Cottage Homes, Ramsey County, Minnesota ("Land") together with: (1) all buildings and improvements constructed or located on the Land ("Buildings") and (2) all easements and rights benefiting or appurtenant to the Land (collectively the "Real Property");

b.       Personal Property.  All of the personal property situated on and used in conjunction with the operation of the Real Property;

c.       Leases. All interest, if any, as Lessor in all of the leases pertaining to the Real

Property ("Leases");

d.      Contracts, Permits, Warranties, Records, Miscellaneous.   All interests, if
any, in the following items relating to the Real Property: all service and
maintenance contracts, equipment leases  and  other  contracts
("Contracts"); all permits and licenses ("Permits"); all warranties and
guaranties relating to the Real Property ("Warranties"); and all
business records, including management, leasing, real estate taxes,
assessments, insurance, rents, maintenance, repairs, capital improvements and
services ("Records"); and

e.      All rights, title and interest in the loan documents evidencing the first
mortgage loan described in the Motion.

(the foregoing are hereinafter collectively referred to as the "Property").

5.      Provided the sale of the Property as contemplated pursuant to the terms of the

purchase agreement is closed, the Buyer will take the Property free and clear of all liens, interests

and encumbrances, **except** as follows:

a.      That certain Mortgage, Security Agreement, Assignment of Leases and
Rents and Fixture Filing, dated July 27, 2007 ("First Mortgage") executed
by Beckerella Investments, Incorporated, a Minnesota corporation, as
mortgagor, in favor of Washington Mutual Bank, a federal association, as
mortgagee, and recorded in the office of the Ramsey County Recorder on
August 1, 2007 Federal Deposit Insurance Corporation as Receiver for
Washington Mutual Bank, FA with Assignment of Mortgage, Security
Agreement, Assignment of Leases and Rents and Fixture Filing, dated
September 26, 2011, recorded on October 7, 2011, as Document No.
4299440, and further assigned to JP Morgan Chase Bank, N.A. by
Assignment of Mortgage, Security Agreement, Assignment of Leases and
Rents and Fixture Filing dated September 26, 2011, recorded on October
7, 2011 as Document No. 4299440, as further assigned to Landmark
Community Bank by Assignment of Mortgage and Loan Documents,
dated October 16, 2012, and recorded on November 14, 2012 as
Document No. 4358815; the Buyer is assuming said First Mortgage;

b.      Annual charges to the City of St. Paul for storm sewer, recycling and
ROW maintenance fees which for the year 2013 are $9,796.70; and

c.      Real estate taxes payable in 2013 in the amount of $122,912.00.

6.      Without limiting the generality of the foregoing paragraph, and provided the sale of the Property as contemplated pursuant to the terms of the purchase agreement is closed, the Buyer will take the Property free and clear of:

a.      That certain Mortgage dated August 1, 2007 in the original principal amount of $945,000.00, and recorded in the office of the Ramsey County Recorder on February 24, 2009 as Document No. 4142094 ("Second Mortgage") as assigned to Landmark Community Bank, N.A. by assignment, dated February 24, 2009, and recorded in the office of the Ramsey County Recorder on February 24, 2009 as Document No. 4142095; and

b.      All other liens, interests and encumbrances.

7.      The proceeds from the sale of the Property shall be disbursed at closing as follows:

a.      The instruments and documents executed by Buyer with respect to the Buyer's assumption of the debt secured by the First Mortgage and related undertakings shall be delivered to Landmark Community Bank, N.A.;

b.      Cash in the amount of $250,000.00, paid by Buyer, shall be disbursed to Landmark Community Bank and applied to the Second Mortgage Note;

c.      The new promissory note and new mortgage, in the original principal amount of $300,000.00 executed by Buyer in favor of Landmark Community Bank, N.A. shall be delivered to Landmark Community Bank, N.A.

d.      Cash, in the amount of $10,000.00, paid by Buyer, shall be disbursed to John Hedback trustee of the bankruptcy estate of Dadders, Inc.; and

e.      Cash, in the amount of $5,000.00, paid by Buyer, shall be used to pay closing costs payable by Buyer pursuant to the terms of the Purchase Agreement.

8.      The Trustee is authorized to execute such documents as may be necessary to effectuate the terms of this Order.

    9.      Notwithstanding FED. R. BANKR. P. 6004(h), this Order is effective immediately.


Dated this _____ day of _____, 2013.



                            Dennis D. O'Brien
                            United States Bankruptcy Judge